**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Torrez, ) | CIV-04-1527-PHX-RGS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Child Protective Services, *et al.*, ) | |
| Defendants. ) | |

Pending before the Court is Plaintiff's Motion for Summary Judgment on Allocation of Fault to Non-Party Maricopa Medical Center, Nurses, and Dr. Patricia Graham (Doc. #53). After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

**BACKGROUND**

Plaintiff Daniel Torrez brought this action on behalf of himself and his minor daughter, Jane Doe Torrez ("JDT"). Plaintiff alleges that the State of Arizona, through Child Protective Services ("CPS") and its investigator Daniel Moe, negligently investigated a report that JDT had been sexually assaulted by her mother's live-in boyfriend, Brian Wahl ("Wahl") on or about October 5, 2001. It is Plaintiff's theory that as a result of the inability of CPS to substantiate the sexual abuse, Wahl was allowed to return home and continually abuse JDT over a period of a year and a half.

1  On or about October 5, 2001, JDT presented with her mother and Wahl at a West
2  Valley hospital with a large vaginal tear. Due to the nature of the injury, she was transferred
3  to the Maricopa Medical Center for a more thorough exam. JDT, her mother, and Wahl each
4  reported that the injury was accidental. However, medical personnel were suspicious of the
5  true nature of the injury and contacted the El Mirage Police Department, who initiated an
6  investigation. A report was called into CPS on October 6, 2001, and Dan Moe was assigned
7  to investigate on behalf of CPS.

8  While at the Maricopa Medical Center, JDT was interviewed by a nurse or nurses and
9  a medical resident regarding her injury and her feelings toward Wahl. The substance of the
10 interview was not reported to the police or CPS. After her release from the Maricopa
11 Medical Center, JDT was again evaluated on October 10, 2001, by Patricia Graham, M.D.
12 Dr. Graham indicated in her patient chart that JDT advised her that the injury was not
13 accidental. Dr. Graham failed to report this new information to the police, CPS, or the
14 attending doctors who had initially referred JDT to her for a follow-up examination.

15 On August 6, 2004, Defendants filed their Answer to Plaintiff's Complaint, and on
16 August 10, 2004, Defendants requested authorizations from Plaintiff's counsel for release of
17 JDT's medical records. Defendants did not receive the requested authorizations and Co-
18 Defendant, El Mirage, subsequently followed up with Plaintiff on December 21, 2004,
19 reminding Plaintiff's counsel that no medical information had been received. On or about
20 March 1, 2005, Defendants received a Mediation Memorandum from Plaintiff that included
21 references to and copies of the Maricopa Medical Center medical records of Dr. Graham and
22 the nurse or nurses who had learned new information from JDT regarding her injuries.

23 On March 7, 2005, Defendants filed a Notice of Non-Party at Fault notifying the
24 Court of their intention to ask the jury to apportion fault to the Maricopa Medical Center, Dr.
25 Graham, and the nurses who were involved in treating JDT. In their Notice, Defendants state
26 that, "Dr. Graham and one or more nurses at Maricopa Medical Center were told by Jane Doe
27 [Torrez] shortly after her October 2001 injury that it was not accidental and may have been
28 the result of abuse or neglect. If true, these individuals had a statutory duty to report such

1  information to police and CPS, but failed to do so.  Moreover, their employer, the Maricopa
2  Medical Center is vicariously liable for their agents and employees."
3        On December 30, 2005, Plaintiff filed a Motion for Summary Judgment arguing that
4  Defendants should not be permitted to allocate fault to non-party Maricopa Medical Center,
5  Dr. Graham, and the nurses involved in treating JDT.  Plaintiff contends that Defendants
6  failed procedurally to make a timely designations of non-parties at fault and failed
7  substantively to support their designations with any facts or investigation.

## DISCUSSION

9        Plaintiff moves for summary judgment arguing that the designations of non-parties
10 at fault filed in Defendants' Notice on March 7, 2005, were untimely.  Specifically, Plaintiff
11 asserts that pursuant to A.R.S. § 12-2506(B) and Ariz.R.Civ.P. 26(b), Defendants'
12 designations had to have been made no later than January 3, 2005.[1]  Plaintiff claims that

---

[1]  A.R.S. § 12-2506(B)

> In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault. Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties. Assessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action.

Ariz.R.Civ.P. 26(b)

> (5) Non-party at Fault. Any party who alleges, pursuant to A.R.S. § 12- 2506(B) (as amended), that a person or entity not a party to the action was wholly or partially at fault in causing any personal injury, property damage or wrongful death for which damages are sought in the action shall provide the identity, location, and the facts supporting the claimed liability of such nonparty at the time of compliance with the requirements of Rule 38.1(b)(2) of these Rules, or within one hundred fifty (150) days after the filing of that party's answer, whichever is earlier. The trier of fact shall not be permitted to allocate or apportion any percentage of fault to any nonparty whose identity is not disclosed in accordance with the requirements of this subpart 5 except upon written agreement of the parties or upon motion establishing newly discovered evidence of such nonparty's liability which could not have been discovered within the time periods for compliance with the requirements of this

- 3 -

1  Defendants failed to engage in any discovery and made no effort to determine the
2  circumstances of the events in question before the non-party at fault designation period
3  ended. Plaintiff additionally argues that Defendants failed to provide the identity and "facts
4  supporting the claimed liability of such nonparty" as required by Ariz.R.Civ.P. 26(b). In
5  support of this contention, Plaintiff states that Defendants failed to specifically name the
6  nurses involved in treating JDT. Lastly, Plaintiff contends, contrary to Defendants'
7  argument, that there was no statutory duty on the non-parties to report information regarding
8  the true nature of JDT's injury, because a report had already been made about the incident
9  and the information was duly recorded in her medical records.

10  In their Response, Defendants assert that their designations of non-parties at fault
11  were timely under the circumstances. Defendants allege that pursuant to Ariz.R.Civ.P. 26(b)
12  they were permitted to file their Notice of Non-Party at Fault after the deadline because of
13  newly discovered evidence and based upon written agreement of the parties. Defendants
14  claim (1) that they were not provided a copy of the medical records, which revealed the roles
15  that Dr. Graham, the nurses, and Maricopa Medical Center had in this case until March 1,
16  2005, when they received Plaintiff's Mediation Memorandum, constituting newly discovered
17  evidence; and (2) that Plaintiff's counsel never raised any objection to the timing or adequacy
18  of the Notice in subsequent correspondence, constituting a written agreement.

19  Defendants additionally contend that their designations were sufficient in that Dr.
20  Graham and other healthcare providers had information regarding the true nature of the
21  injury to JDT and failed to report it to anyone as required by statute. Defendants argue that
22  this failure to report contributed to JDT's injuries. Defendants cite to Arizona case law that
23  "reflects recognition of the legislature's strong desire to ensure that comparative fault
24  principles are applied in most cases where the actions of more than one party combine to
25  cause harm." Natseway v. City of Tempe, 909 P.2d 441, 444 (Ariz. Ct. App. 1995).

26
27          subpart 5.
28

The fault of a non-party may be considered by the trier of fact if the defending party gives the appropriate notice in accordance with court rules. See A.R.S. § 12-2506(B). Rule 26(b)(5) of the Arizona Rules of Civil Procedure requires that any party alleging that a non-party was at least partially at fault for the plaintiff's damages must provide certain information about the non-party "within one hundred fifty (150) days after the filing of that party's answer." The trier of fact may not apportion any percentage of fault to a non-party not timely disclosed except upon written agreement of the parties or "upon motion establishing newly discovered evidence of such nonparty's liability which could not have been discovered within the time periods for compliance with the [deadline] requirements." Ariz. R. Civ. P. 26(b).

In the present case, it is alleged that Dr. Graham, one or more nurses, and other healthcare providers affiliated with the Maricopa Medical Center had information that the injury to JDT was not caused in the manner that JDT had described, and appeared to be the result of abuse. These medical providers are mandatory reporters pursuant to Arizona's Child Abuse Reporting Statute – A.R.S. § 13-3620. A.R.S. § 13-3620 states in pertinent part:

> A. Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect that appears to have been inflicted on the minor by other than accidental means ... shall immediately report or cause reports to be made of this information to a peace officer or to child protective services ... . For the purposes of this subsection, "person" means:
>
> 1. Any physician, physician's assistant, optometrist, dentist, osteopath, chiropractor, podiatrist, behavioral health professional, nurse, psychologist, counselor or social worker who develops the reasonable belief in the course of treating a patient.
>
> \*   \*   \*
>
> D. Reports shall be made immediately by telephone or in person and shall be followed by a written report within 72 hours. The reports shall contain:
>
> 1. The names and addresses of the minor and the minor's parents or the person or persons having custody of the minor, if known.
>
> 2. The minor's age and the nature and extent of the minor's abuse, child abuse, physical injury or neglect, including any evidence of previous abuse ... .
>
> 3. Any other information that the person believes might be helpful in establishing the cause of the abuse, child abuse, physical injury or neglect.

1  The record demonstrates that although these medical providers were mandatory
2 reporters, they failed to report information regarding the true nature of JDT's injury to the
3 police or CPS as required by statute. Upon review of the record, this failure to report
4 coupled with Plaintiff's failure to provide executed authorizations for access to the medical
5 records as requested by Defendants, led to Defendants' March 1, 2005 discovery of the roles
6 that Dr. Graham, the nurses, and Maricopa Medical Center had in this case.

7  The Court finds that this constitutes newly discovered evidence and, as such,
8 Defendants' March 7, 2005 Notice of Non-Party at Fault was sufficient pursuant to A.R.S.
9 § 12-2506(B) and Ariz.R.Civ.P. 26(b). Therefore, Plaintiff's Motion for Summary Judgment
10 on Allocation of Fault to Non-Party Maricopa Medical Center, Nurses, and Dr. Patricia
11 Graham is denied.

## CONCLUSION

13  IT IS ORDERED that Plaintiff's Motion for Summary Judgment on Allocation of
14 Fault to Non-Party Maricopa Medical Center, Nurses, and Dr. Patricia Graham (Doc. #53)
15 is DENIED.

16  DATED this 8th day of March, 2006.

_____
Roger G. Strand
Senior United States District Judge